R. L. SWEARER ET AL. *v.* UNITED STATES

**No. 5598.**—Invoices dated Hanley, Stoke-on-Trent, England, October 12, 1939, etc.
Entered at Pittsburgh, Pa., November 4, 1939, etc.
Entry No. 263, etc.

(Decided March 13, 1942)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

DALLINGER, Judge: The appeals to reappraisement listed in schedule A, hereto attached and made a part hereof, involve the question of the dutiable value of certain so-called potters' gold colors exported from England in October, 1939, and in August, September, and October, 1940, and entered at the port of Pittsburgh.

The merchandise was appraised on the basis of the United States value thereof, the values being based upon the importer's sales of such imported merchandise in the United States during the said exporting period. The plaintiffs claim that there existed at the time of exportation a foreign value for said merchandise and that the entered values are the correct dutiable values thereof.

It is conceded that no export value exists for said merchandise for the reason that Charles W. Harrison, the ultimate consignee, is the sole and exclusive agent of the foreign manufacturer in this country.

At the hearing, held at Pittsburgh on May 8, 1941, the plaintiffs offered in evidence an affidavit executed by Sidney T. Harrison, managing director of Harrison & Son (Hanley), Ltd., Stoke-on-Trent, England, together with 55 copies of invoices referred to on page 3 of said affidavit. Counsel for the Government objected on the ground that the invoices were not attached to the affidavit. On the statement by counsel for the plaintiffs that he personally received by air mail and opened the envelope addressed to Jerome G. Clifford of 17 Battery Place, New York, N. Y., and found the 55 copies of said invoices with said affidavit, the said affidavit was admitted in evidence by the court as exhibit 1 over objection by counsel for the Government, the court holding that under the circumstances the copies of said invoices might be considered as attached to said affidavit.

Counsel for the Government then offered in evidence a certified copy of a report of Hugo Wallenfels, Treasury representative, dated March 8, 1940, which was duly admitted in evidence as exhibit 2, over objection of counsel for the plaintiffs.

The Government then offered in evidence the testimony of Walter G. Roy, appraiser of merchandise at the port of Pittsburgh, who testified that previous to 2 years ago he was examiner of merchandise at said port, and in that capacity passed upon the merchandise at bar; that the nongold colors described in the invoices here were appraised as entered and invoiced, and that values were advanced only in the case of the so-called gold colors; that by gold colors he meant colors which contained gold as a component material; and that none of the sales listed on pages 5 and 6 of exhibit 2 cover any gold colors of the type involved herein.

On cross-examination the witness testified that the gold colors were appraised on the basis of United States value, and that said

values were based on prices that the importer invoiced his customers for such merchandise.

In the affidavit (exhibit 1), the affiant, being duly sworn, stated that he had been managing director of Harrison & Son, Ltd., the foreign manufacturer and exporter herein, for the past 25 years; that in that capacity he had charge of all factory operations as well as of all sales both at home and abroad of all his company's products; that he was very familiar with all sales made to the company's sole agent in the United States, Charles W. Harrison, the ultimate consignee and real importer herein; that tunnel kilns have been used in English potteries during the last 10 years; that prior to that time the softer gold colors, such as are covered by the importations herein, were prepared especially for exportation to the United States; that the use of tunnel kilns in the pottery industry in England has been developing gradually for the past 10 years, so that during the last 5 years they have come into very general use; that therefore softer gold colors also came into general use in England as the pottery industry adopted the tunnel kilns; that consequently said softer colors are today and for the past 5 years have been in common use in England; that the identical colors represented by invoice item numbers S–280, S–316, S–367, 3084, 3201, 3355, 3561, 3571, 3987, and 3991, as well as all other colors sold to the importer herein, were, prior to the importations herein, and are now, used in English potteries, and were sold and freely offered for sale to all purchasers for home consumption in England during all of that time; that all colors manufactured by Harrison & Son, Ltd., the exporter herein, bearing the same item numbers, are always absolutely of the same color; that attached to the affidavit are copies of invoices of sales made in the ordinary course of trade; that Stoke-on-Trent in England is the principal market in England for potters' colors; that the usual wholesale quantity is 5 pounds or more of any one color; that any invoice for a quantity less than 5 pounds of any one color would be either a sample order or part of a larger order; that the prices charged to the importer herein were the same as those charged for identical merchandise in the English market for home consumption; that the Mr. Millington, who was interviewed during affiant's absence from the factory by a United States Treasury representative, was merely a bookkeeper in the company's employ; that he never had anything to do with plant operations or the manufacturing end of the business; and that he has been confined to a sanitarium for the past 9 months, for which reason it was impossible to obtain an affidavit from him.

As hereinbefore stated, accompanying said affidavit are 55 copies of invoices, it being stated that the prices on said invoices were the prices

prevailing in England for identical merchandise when sold and freely offered for sale for home consumption in England in the usual wholesale quantities and in the ordinary course of trade.

In the report of Treasury Representative Wallenfels (exhibit 2) he states that on February 1, 1940, he visited the offices of Harrison & Son, Ltd., at Hanley, England, and that a Mr. Millington, described as the export manager, offered certain books and records for his examination.

Under the heading "Foreign Value" occurs the following statement:

Gold colors sold to the United States are especially made for the importer from a secret formula and not offered or sold in the home market. The gold colors sold in the home market are harder, less fusible, and Mr. Millington stated there is no basis of comparison as to the colors except that the price is based on the market price of gold, now 168/— a fine oz.

There is no difference, however, between *non-gold* colors sold for export or inland.

*Prices*

No printed price list is issued.

Inland prices are highly competitive and Mr. Millington informed me that the company is able to obtain a better price from the importer than from local buyers.

*Discounts*

Neither trade nor cash discounts are granted.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

*Usual wholesale quantity*

1–15 lbs. of a color.

*Evidence of sales*

A thorough search of the company's sales records disclosed only 12 sales made in the home market. &ast; &ast; &ast;.

The said sales are those which the witness, Roy, testified did not cover any gold colors.

Upon this record I find the following facts:

1. That the merchandise at bar consists of certain so-called potters' gold colors represented on the involved invoices by items S–280, S–316, 3084, 3201, 3355, 3561, 3571, 3987, and 3991.

2. That identical merchandise to that involved herein at the time of the exportation of the merchandise at bar was sold and freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade for home consumption in England.

3. That Stoke-on-Trent is the principal market in England for said merchandise.

4. That the usual wholesale quantity is 5 or more pounds of any one color, any quantity less than 5 pounds being either a sample order or part of a larger order.

Upon these facts I hold, as a matter of law, that there exists for said merchandise a foreign value which is as follows:

| Merchandise Item No. | Sterling per pound |
|---|---|
| S–280 | 20 shillings |
| S–316 | 40 shillings |
| 3084 | 21 shillings 9 pence |
| 3201 | 20 shillings |
| 3355 | 8 shillings |
| 3561 | 25 shillings |
| 3571 | 11 shillings |
| 3987 | 39 shillings |
| 3991 | 15 shillings |

Plus casks and packing as invoiced.

In regard to item S–367 there is no evidence in the record as to the price at which said merchandise was freely offered for sale to all purchasers for home consumption in England. Hence, in the absence of evidence of foreign value, the presumption in favor of the correctness of the appraiser's action is not overcome and I therefore find the proper value of said merchandise to be the appraised value thereof,

Judgment will be rendered accordingly.